**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

ISIS NAGUIB,

        Plaintiff,

    v.

TRIMARK HOTEL CORPORATION, *a
Texas corporation*, and M&C HOTEL
INTEREST INC., *a Delaware corporation
doing business as* Millennium Hotel &
Resorts,

        Defendants.

Case No. 15-CV-3966 (JNE/SER)
**ORDER**

Plaintiff Isis Naguib is a former Executive Housekeeper for Millennium Hotel

Minneapolis, which the Complaint implies is owned and operated by Trimark Hotel Corporation

and/or M&C Hotel Interest Inc. (collectively "Millennium"). (*See* Compl., Dkt. No. 1-1.) Naguib

claims Millennium discriminated against her on the basis of her age and retaliated against her

because she refused to violate the law, opposed discriminatory practices, and took protected

leave.[1] The matter is before the Court on Millennium's Motion for Summary Judgment on all of

Naguib's claims. (*See* Dkt. No. 27.) For the following reasons, the Motion is granted.

## I. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[1]    Naguib also claims, in Count II, that Millennium discriminated against her on the basis of a
disability. (*See* Compl. ¶¶ 56-64.) According to Millennium, "[b]y letter dated November 21,
2016, Naguib voluntarily dismissed Count II for disability discrimination." (Defendants'
Memorandum in Support of Their Motion for Summary Judgment ("Def. Br.") 18, Dkt. No.
29.) Naguib does not dispute this contention. Accordingly, the Court refrains from evaluating
the merits of this claim and dismisses it without prejudice. *See Thomas v. United
Steelworkers Local 1938*, 743 F.3d 1134, 1141 (8th Cir. 2014) (treating claims as abandoned
under related circumstances).

56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court views the record and all justifiable inferences in favor of the non-movant. *Liberty Lobby,* 477 U.S. at 255.

## II. BACKGROUND

Naguib is currently 69 years old and an Egyptian-born American citizen. (*See* Deposition of Isis Naguib ("Naguib Dep.") 15:25-17:7, Dkt. No. 30-1.) Millennium employed Naguib as its Executive Housekeeper until discharging her in 2014. (*See id.* at 12:6-10.) In this role, Naguib was responsible for the entire housekeeping department, which comprised herself, three assistants (one of which was her daughter-in-law, Jelena Tkastenko), and about 50 housekeepers. (*Id.* at 20:16-23:25, 27:12-21.) One of her responsibilities was payroll, and she sometimes changed employee time punches if employees signed a sheet indicating they punched out later than they actually worked. (*See id.* at 43:5-9, 82:6-10, 167:9-181:6.)

The facts of this case revolve around a series of interactions Naguib had with Millennium management and human resources ("HR"). First, in November 2011, Naguib was called to testify in a deposition regarding the condition of Millennium's building. (*See id.* at 230:13-15.) A lawyer for the company and Robert Rivers, then general manager of Millennium, met with Naguib to prepare her for the deposition. (*See id.* at 232:7-234:1.) They told Naguib that

Millennium did not follow the "Freeman" maintenance standards, which was at issue in the case. (*Id.*) Naguib disagreed, believing that Millennium followed the Freeman standards, and she testified accordingly. (*See id.* at 230:16-19, 234:3-5.) Months later, Naguib met with an outside attorney for Millennium to prepare to testify at trial. (*Id.* 234:9-17.) He yelled at Naguib and threatened to have the president of Millennium call her and tell her that Millennium did not follow the Freeman standards, but she refused to change her testimony. (*Id.*) The matter settled, and, as a result, Millennium paid millions of dollars to renovate its building. (*See* Deposition of Dawn Robbins ("Robbins Dep.") 82:7-14, Dkt. No. 30-2.)

Millennium's renovation took place from late 2012 to spring 2013. (*See id.* at 82:3-4.) The entire hotel was closed to guests. (*Id.* at 82:15-17.) Key employees continued working throughout, but the vast majority of employees were laid off, including all housekeepers. (*See* Robbins Dep. 82:25-83:17; Naguib Dep. 265:17-20.) Rivers notified Naguib that she would be laid off during the renovation, but shortly before she was to be laid off, Rivers permitted Naguib to work four days per week. (Naguib Dep. 266:13-20.) Due to her salaried position, she had to take one vacation day each week to cover the fifth day's pay. (*Id.*) None of the other executives received a cut in hours or was laid off during the renovation. (*See id.* at 266:5-12.)

As the renovation neared completion, Rivers transferred out of his position, making way for Katie Neufeld to become Millennium's new general manager. (*See id.* at 69:1-3; Deposition of Katie Neufeld ("Neufeld Dep.") 15:21-25, Dkt. No. 30-1.) During this transition, Rivers sent an email to Bryan Schiffauer, the renovation project manager, asking if Neufeld "appear[ed] to be taking control, especially of Mike and Isis." (*See* Dkt. No. 30-4 at 52-58.) The email was not addressed to Naguib, though she later received the email. (*See id.*) Millennium's renovation completed in April 2013. (*See* Naguib Dep. 69:4-6; Neufeld Dep. 15:21-25.)

Over one year later, in June 2014, one of Naguib's housekeepers retired. Neufeld remarked to Naguib, "good for him, you will probably never retire . . . we are going to have to carry you out of here in a box." (Compl. ¶ 25; Neufeld Dep. 252:16-21.) Neufeld also occasionally asked Naguib, usually over lunch or breakfast, when she was going to retire. (*See* Naguib Dep. 132:16-133:4.)

Throughout summer 2014, management increased its oversight of the housekeeping department. (*See, e.g.*, Compl. ¶ 26; Declaration of Kibinesh Fufa ¶ 2(*l*), Dkt. No. 42.) During this time, Naguib experienced minor inconveniences relating to personnel and operations, brought on by managerial decisions. (*See* Naguib Dep. 266:24-271:9.) Millennium corporate also proposed a revised dress code policy. (*See* Dkt. No. 30-4 at 59-68.) The policy permitted reasonable accommodations for employees whose religious beliefs or practices conflicted with uniform requirements. (*See id.*) Naguib testified that Neufeld directed Naguib to ask three employees to bring notes from a mosque in order to grant them accommodations to wear hijabs at work. (Naguib Dep. 240:22-242:3.) Naguib refused to request notes unless the policy required notes. (*Id.* at 242:8-10.) It did not. (*See* Dkt. No. 30-4 at 59-68.) Nevertheless, Naguib testified she asked for notes, but none were provided. (Naguib Dep. 243:3-5, 241:13-14.) Neufeld denies ever asking for notes from a mosque, but admits she discussed with Naguib that a few employees wore hijabs intermittently. (Neufeld Dep. 114:1-115:3.)

In September 2014, Naguib's son, Omar Naguib, who also worked at Millennium, was suspended after inquiring as to his available vacation balance. (Declaration of Isis Naguib ("Naguib Decl.") ¶ 24, Dkt. No. 41.) His wife, Tkastenko, was demoted from senior assistant executive housekeeper to housekeeping supervisor the same day. (*See id.* ¶ 25; Naguib Dep. 129:14-17.) Shortly thereafter, Omar sent an email to Millennium HR complaining of

4

discrimination, harassment, and retaliation. (*See* Dkt. No. 40-1 at 58-61.) He generally referenced, among other things, how management previously treated Naguib and Tkastenko. (*See id.* at 61.) Robbins followed up with Omar by asking for specifics, but Omar mostly declined to provide details. (*See id.* at 49-56.) By the end of her investigation, Robbins found no evidence of discrimination toward Omar. (*See* Robbins Dep. 36:14-37:21.)

In October 2014, HR directed Naguib to take 80 hours of vacation before the end of the year because Naguib had accumulated 280 hours of vacation time, but could only hold 200 hours per company policy. (*See* Dkt. No. 30-4 at 22; Dkt. No. 30-3 at 3.) Prior to 2014, Naguib had received exceptions from the policy, leading to her 280-hour balance. (*See* Dkt. No. 30-4 at 29.) Although Naguib was previously allowed to accumulate excess vacation time, Millennium corporate decided to strictly enforce its policies, in an effort to reduce vacation pay liability on Millennium's balance sheet. (Neufeld Dep. 56:3-23.)

Millennium gave Naguib eight days to decide when to take two weeks' paid vacation sometime in the upcoming few months, but Naguib did not make a decision, and management assigned her vacation from October 21 to November 3, 2014. (*See* Naguib Dep. 97:22-25; Dkt. No. 30-4 at 29.) Naguib might have been able to simply lose—instead of use—her 80 hours if she had said, "Uncle, I want to lose my vacation." (Robbins Dep. 204:8-14.) But Naguib avoided discussing the matter with management, and Naguib did not explicitly offer to forfeit her vacation time. (*Id.* at 204:19-205:25.) After her vacation dates were decided, but before the vacation, Naguib emailed HR to complain that the vacation was a "way to punish [her] and [her] son, Omar Naguib, because he ha[d] raised certain complaints about discrimination, harassment, and retaliation." (Dkt. No. 30-4 at 26-27, 29-32.) No other employee was forced to take vacation that year or has been since. (*See* Neufeld Dep. 61:1-7.)

During Naguib's paid vacation, Millennium brought in David Simmons to run the housekeeping department. (Deposition of David Simmons ("Simmons Dep.") 11:17-25, Dkt. No. 30-2.) He was not directed to investigate the department, but he was asked to review operations for improvements. (*See id.*; Neufeld Dep. 53:18-54:15.) Within the first few days, Simmons noticed housekeepers punching out after 4:00 PM, but signing for punch corrections with a 4:00 PM end time, even though the housekeepers worked past 4:00 PM. (Simmons Dep. 32:12-33:8.) He inquired as to why, and the housekeepers said they would get into trouble with housekeeping management if they worked overtime. (*Id.* at 33:21-34:12, 104:13-22.) Simmons flagged this issue with Millennium management on October 29, 2014. (*See* Dkt. No. 30-4 at 72.) He also shared that an employee was working as an at-home seamstress after hours. (*See id.*) Jay Moliter, then-Vice President of Operations, responded, "Interesting, could change our plans." (*Id.*)

Upon receiving Simmons's initial report, HR immediately audited the timekeeping system across the entire hotel. (Neufeld Dep. 62:22-63:5.) The audit showed that five departments made punch corrections in 2014. (Declaration of Debbie Daggett ("Daggett Decl.") ¶ 5, Dkt. No. 31.) Housekeeping had 178 edits, and the other departments had 4, 7, 8, and 40 edits. (*Id.*) HR also interviewed housekeeping employees, who reported that Naguib told them to write down 4:00 PM even if they worked later. (*See* Dkt. No. 30-4 at 34-38.) Some employees now declare that they signed for punch corrections because they forgot to punch out, they punched out after changing into street clothes, or they engaged in non-work activities before punching out. (*See, e.g.*, Declaration of Alvina Legun ¶ 2(b), Dkt. No. 43.)

While on forced vacation, Naguib was hospitalized and diagnosed with hypertension. (Dkt. No. 40-1 at 19-20.) Naguib requested documents for leave, under the Family and Medical Leave Act of 1993 ("FMLA"), sometime from October 30 to November 1, 2014. (*See* Naguib

Dep. 108:5-115:15; Dkt. No. 40-1 at 9.) Millennium was investigating her timekeeping practices prior to then. (*See* Dkt. No. 30-4 at 34, 72.) HR approved Naguib's leave request, which was backdated to begin October 27, 2014. (*See* Naguib Dep. 117:9-12, 272:3-6; Dkt. No. 40-1 at 9.)

On November 7, 2014, after Naguib returned from leave, Janice Crane, an HR Director from Chicago, interviewed Naguib about the uncovered wage and hour issues. (*See* Dkt. No. 40-1 at 113-30.) Crane suspended Naguib pending the results of Millennium's investigation. (*See id.* at 128.) Shortly thereafter, on November 13, Naguib sent an email to corporate HR complaining that the forced vacation was punishment for Omar's complaint. (*See* Dkt. No. 30-4 at 40-41.) She also claimed that Neufeld was trying to find reasons to discharge her and other "non-white" employees, as shown by the investigation of her department. (*See id.*)

Millennium discharged Naguib on November 19, 2014 for "wage and hour violations" uncovered by its investigation. (*Id.* at 79.) The company also disciplined two managers and suspended another. (Neufeld Dep. 66:9-68:17.) HR concluded that Naguib's case was different from the others due to the larger number of edits, the use of a "Sign In and Out Sheet" to routinely change time punches, and Naguib's bonus incentive to meet her payroll budget.[2] (Daggett Decl. ¶ 5.) Also related to the decision was the fact that Naguib routinely submitted payroll adjustments, without reporting overtime, for a full-time employee who also worked as an at-home seamstress after hours. (*See id.*) Millennium issued 46 checks to housekeepers for

---

[2]   Naguib received annual bonuses based on Millennium's operating profit and key performance objectives ("KPOs"). (Naguib Dep. 56:16-57:16.) She received a one percent bonus for each KPO achieved. (*Id.*) In 2014, one of her KPOs was the payroll budget. (*Id.*) She felt this KPO was hard to reach in the past. (*Id.* at 59:7-10.) Naguib's bonuses each year totaled $18,000 to $25,000, and reaching each KPO amounted to $700-800. (*Id.* at 57:17-21, 60:21-25.)

unpaid overtime based on its audit. (*See* Declaration of Paul Krejci ("Krejci Decl.") ¶ 2, Dkt. No. 52.)[3] All but two housekeepers accepted the checks. (*Id.* ¶ 3.)

Since Naguib's discharge, the Executive Housekeeper position has not been filled; Nina Seriram, an assistant housekeeping manager who worked under Naguib, and an unnamed Director of Operations are jointly covering the position's duties. (*See* Neufeld Dep. 253:4-254:1; Robbins Dep. 224:25-225:7; Naguib Decl. ¶ 23.)

### III. DISCUSSION

### A.  Retaliation Based on Refusals (Counts I and VI)

Naguib brings two retaliation claims arising out of her refusal to testify that Millennium did not follow the Freeman standards: Count I, under the Minnesota Whistleblower Act ("MWA"), Minn. Stat. § 181.932, subd. 1 (2016), and Count VI, under the common law, as first recognized in *Phipps v. Clark Oil & Ref. Co.*, 396 N.W.2d 588 (Minn. Ct. App. 1986). (Compl. ¶¶ 49-55, 89-94.) Both claims prohibit employers from discharging an employee or otherwise discriminating against an employee with respect to the conditions of employment when an employee "refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any . . . law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason." § 181.932, subd. 1(3); *see Phipps v. Clark Oil & Ref. Corp.*, 408 N.W.2d 569, 571-72 (Minn. 1987) (similar).

---

[3]   Naguib filed, in response to Millennium's reply, a motion for leave to supplement the record. (*See* Dkt. No. 54.) Naguib argues that Millennium violated D. Minn. LR 7.1(c)(3) when it included the Krejci Declaration with its reply because the Declaration contained new factual information, namely that 46 housekeepers were issued checks (instead of, as otherwise in the record, an unknown number). (*See* Dkt. No. 56 at 3.) Naguib asks to supplement the record with the Supplemental Declaration of Michael E. Gerould and its attached exhibit (Dkt. No. 57). The exhibit shows the entire list of Millennium employees who received compensation for unpaid overtime as a result of Millennium's 2014 punch edit investigation. (*See* Dkt. No. 57-1.) The Court grants Naguib's motion and considers both the Krejci Declaration and Naguib's additional exhibit in ruling on Millennium's Motion.

These claims may be proven either with direct evidence or using the *McDonnell–Douglas* burden-shifting framework. *Wood v. SatCom Mktg., LLC*, 705 F.3d 823, 828 (8th Cir. 2013).

      *1.   Direct Evidence*

Naguib argues the following direct evidence shows retaliation for her Freeman testimony: the taking-control email, the uncle justification, management's desire to investigate the housekeeping department, and the change-of-plans email. (*See* Plaintiff's Response Memorandum in Opposition ("Pl. Br.") 28, Dkt. No. 49.) Millennium argues that none of this conduct exhibits retaliatory animus. (*See* Defendants' Reply Memorandum ("Def. Reply Br.") 4, Dkt. No. 51.)

Direct evidence is that which shows "a specific link between the alleged [retaliatory] animus and challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Wood*, 705 F.3d at 828 (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)). On their face, the email conversations do not display retaliatory animus, and they do not refer to Naguib's Freeman testimony. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1045 (8th Cir. 2011) ("Direct evidence does not include statements by decisionmakers that are facially and contextually neutral."). Management's desire to look into the housekeeping department does not show retaliatory animus on its face or in context, nor does the uncle justification, which was made during a deposition for this case. None of this conduct hints at a specific link between (1) any retaliatory animus resulting from Naguib's Freeman testimony, and (2) her discharge or any other claimed adverse employment action. The Court will not speculate as to the possible hidden meanings behind otherwise innocuous statements and conduct. *See Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006) (refraining from engaging in speculation as to the

meaning of neutral remarks). Naguib has not made out a retaliation case based on direct evidence.

### 2.  *McDonnell-Douglas*

To make out a prima facie retaliation case using the *McDonnell-Douglas* framework, Naguib must prove: (1) she engaged in protected conduct, (2) she was subjected to an adverse employment action, and (3) a causal connection between (1) and (2). *Wood*, 705 F.3d at 829. If the prima facie case is made out, "the burden of production then shifts to the employer to articulate a legitimate, non-retaliatory reason for its action, after which the employee may demonstrate that the employer's articulated reasons are pretextual." *Cokley v. City of Otsego*, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001).

### a.  Protected Conduct

Naguib argues that she engaged in statutorily-protected conduct when she refused to testify that Millennium did not follow the Freeman standards.[4] (*See* Pl. Br. 23.) Millennium counters that management did not direct Naguib to provide false testimony in November 2011. (Defendants' Memorandum in Support of Their Motion for Summary Judgment ("Def. Br.") 20, 36, Dkt. No. 29.) Naguib concedes this point, but argues that management attempted to influence her to testify falsely; her refusal in response to this influence, she says, is protected conduct. (Pl. Br. 24.) The evidence supporting this element is questionable, as well as Naguib's implied-directive theory. *Compare Grundtner v. Univ. of Minn.*, 730 N.W.2d 323, 331 (Minn. Ct. App. 2007) ("Indirect or implied directions could constitute an adequate order."), *with Piekarski v. Home Owners Sav. Bank, F.S.B.*, 956 F.2d 1484, 1492 (8th Cir. 1992) ("An employee cannot

---

[4]  To the extent Naguib claims her alleged refusals relate to the dress code, such claims fall within the MHRA's terms and are preempted by the MHRA's exclusivity provision. *See* Minn. Stat. § 363A.04 (2016). And to the extent that she argues that other conduct was protected activity for Counts I and VI, such conduct did not involve refusals. (*See* Pl. Br. 25.)

refuse to take an action his employer has not requested he take."). Despite this, the Court assumes, without deciding, that Naguib engaged in protected activity.

b.   Adverse Employment Action

Naguib claims she suffered a variety of adverse employment actions after her Freeman testimony: reduction of hours during Millennium's renovation, failure by Millennium to investigate her various complaints, forced vacation, discharge, and defamation (resulting from the accusation that Naguib perpetrated a fraud on her employees). (Pl Br. 27.) Millennium argues that the discharge is the only adverse employment action. (*See* Def. Br. 21.)

An adverse employment action is that which "would likely dissuade a reasonable worker from engaging in protected conduct." *Chavez-Lavagnino v. Motivation Educ. Training, Inc.*, 767 F.3d 744, 749 (8th Cir. 2014); *see also* Minn. Stat. § 181.931, subd. 5 (2016) (defining 'penalize'). Such actions include discharge, reductions in salary, and sapped vacation time. *See Chavez-Lavagnino*, 767 F.3d at 749-50. Minor inconveniences are generally insufficient. *See Leiendecker v. Asian Women United of Minn.*, 731 N.W.2d 836, 842 (Minn. Ct. App. 2007).

Three of Naguib's five claimed harms are not supported by evidence in the record. First, Naguib did not provide any evidence that Millennium has a written policy of always investigating complaints. She points to Millennium's harassment policy, but that policy's terms do not require Millennium to conduct investigations. (*See* Dkt. No. 40-1 at 145-46.) She also failed to provide any evidence that Millennium has an *informal* policy of always investigating complaints; the record only reveals that Millennium once hired an independent investigator when there was a personal dispute between two executives. (*See* Robbins Dep. 227:9-24.) Moreover, Naguib failed to cite any evidence that management or HR did not actually investigate her complaints. Therefore, Naguib did not make out a prima facie case based on a failure to

investigate. *See Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 795 (8th Cir. 2011) (holding that failure to provide evidence that the employer did not investigate complaints of discrimination undermined discrimination claims); *Carraher v. Target Corp.*, 503 F.3d 714, 719 (8th Cir. 2007) (holding that merely an alleged failure to follow a policy of investigating complaints did not give rise to an inference of discrimination).

Similarly, Naguib submitted no evidence of defamation, instead only offhandedly asserting that defamation occurred. (*See* Pl. Br. 38.) Without evidence to support it, a prima facie case supported only by allegations of defamation fails at summary judgment.

Third, Naguib failed to provide evidence that being forced to take two weeks of paid vacation would likely dissuade a reasonable employee from engaging in protected conduct. The record does not show or imply that Naguib suffered a reduction in salary as a result being forced to take her excess accrued vacation time, which would have been forfeited if left unused. *See Washington v. Ill. Dep't of Rev.*, 420 F.3d 658, 662 (7th Cir. 2005) (holding that induced vacation may be an adverse employment action if it amounts to a reduction in salary). Therefore, a prima facie case based on her forced vacation also fails.

However, there can be little doubt that Naguib's reduction in hours during Millennium's renovation and her discharge both qualify as adverse employment actions.[5] *See Chavez-Lavagnino*, 767 F.3d at 749-50. The Court will consider the rest of Naguib's prima facie case with respect to these two claimed adverse employment actions.

---

[5] Millennium argues that the reduction in hours during the renovation is barred by the applicable statute of limitations, which it asserts is two years. (*See* Def. Reply Br. 6 (citing *Ford v. Minneapolis Pub. Sch.*, 874 N.W.2d 231, 233-34 (Minn. 2016)).) The state of the law in this regard is unclear, and the issue need not be decided, so the Court declines to rule on it.

c.   Causation

To prove causation, Naguib cites her direct evidence and the timing of the adverse actions in relation to her Freeman testimony. (*See* Pl. Br. 29-30.) She argues that "consistent and ongoing retaliation," shown by comparing the "first 30 years of [her] career to her last three," establishes a pattern and chain of causation. (*Id.* at 29.) Millennium responds by arguing that the length of time between Naguib's Freeman testimony and the claimed adverse employment actions undermines causation, in addition to the fact that Rivers (the manager at the time Naguib testified) left in 2013 and had no hand in Naguib's discharge. (*See* Def. Br. 21-23.)

"The causal connection requirement may be satisfied 'by evidence of circumstances that justify an inference of retaliatory motive, such as a showing that the employer has actual or imputed knowledge of the protected activity and the adverse employment action follows closely in time.'" *Dietrich v. Can. Pac. Ltd.*, 536 N.W.2d 319, 327 (Minn. 1995) (quoting *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 445 (Minn. 1983)). The temporal proximity must be "very close": a period of more than two months between protected activity and adverse employment action is generally too long to support causation without additional evidence. *Lors v. Dean*, 746 F.3d 857, 866 (8th Cir. 2014); *see also Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832-33 (8th Cir. 2002) (collecting cases).

Naguib's reduction in hours occurred several months after she refused to change her testimony. She was discharged more than two years after the same event. These long periods of time are insufficient, by themselves, to establish a causal connection, and there is no evidence that any intervening events were related to Naguib's Freeman testimony or that Naguib's workplace conditions severely worsened in an escalating fashion. Naguib's direct evidence does not make up for the lack of temporal proximity. As previously stated, this direct evidence does

not show a non-speculative link between (1) her Freeman testimony and (2) her reduction in hours or discharge. Naguib has failed to provide evidence of causation justifying an inference of retaliatory cause and effect. But more importantly, Millennium has a legitimate, non-discriminatory reason for reducing Naguib's hours and discharging her.

### d.   Legitimate, Non-discriminatory Reason

First, Millennium has a legitimate, non-discriminatory reason for reducing Naguib's hours during the renovation. While the renovation was underway, the entire hotel was closed to guests, obviating the need for a housekeeping presence. (*See* Robbins Dep. 82:7-9.) Almost all employees were laid off, including all housekeepers. (*See id.* at 82:25-83:17; Naguib Dep. 265:17-20.) Given this, there was little need for Naguib's services or leadership. Millennium thus had a legitimate, non-discriminatory reason for reducing Naguib's hours during the course of its renovation. *See Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948, 955 (8th Cir. 2001) (holding that a reduction in force, prompted by revenue decline, is a legitimate, non-discriminatory reason); *Bright v. Standard Register Co.*, 66 F.3d 171, 172-73 (8th Cir. 1995) (similar).

Second, Millennium asserts it has a legitimate, non-discriminatory reason for discharging Naguib because it honestly believed—and continues to believe—that Naguib committed wage and hour violations by editing employee punches. (*See* Def. Br. 26-28; Def. Reply Br. 2-3.) If an employer honestly believed that an employee violated company policy and acted on that basis, the employer is not liable for retaliation. *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 416 (8th Cir. 2010); *Scroggins v. Univ. of Minn.,* 221 F.3d 1042, 1045 (8th Cir. 2000). In evaluating an employer's belief, courts give deference to the employer's consideration of information gathered from its internal investigations, so long as the employer acted in good faith. *See Alvarez*, 626 F.3d at 417.

14

The record shows that Millennium honestly believed Naguib violated wage and hour laws. After becoming aware of potential violations, Millennium immediately conducted a hotel-wide audit, investigated five departments, and spent three weeks investigating the housekeeping department by thoroughly reviewing payroll corrections and interviewing employees. (*See* Neufeld Dep. 62:22-63:5; Daggett Decl. ¶ 5; Dkt. No. 30-4 at 34-38.) After concluding all investigations, Millennium disciplined two managers, suspended another, and discharged Naguib. (Neufeld Dep. 66:9-68:17.) Its decisions were based on the severity and extent of the wage and hour violations it believed had occurred. (*See, e.g.*, Daggett Decl. ¶ 5.) Further, Millennium proactively compensated employees for the unpaid overtime it discovered. (*See* Krejci Decl. ¶ 2; Dkt. No. 57-1.)

The evidence in the record supports finding that Millennium had legitimate, non-discriminatory reasons for reducing Naguib's hours during the renovation and discharging her after it discovered evidence of what it believed to be wage and hour violations. Naguib therefore has the burden to show that Millennium's legitimate, non-discriminatory reasons are pretext for retaliation.

e. Pretext

"[T]o prove pretext in a retaliation case, the plaintiff 'must both discredit [the] asserted reason for the [adverse action] and show the circumstances permit drawing a reasonable inference that the real reason for [the adverse action] was retaliation.'" *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1055 (8th Cir. 2015) (quoting *Gilbert v. Des Moines Area Cmty. Coll.,* 495 F.3d 906, 918 (8th Cir.2007)); *see also Hoover v. Norwest Private Mortg. Banking*, 632 N.W.2d 534, 546-47 (Minn. 2001) (similar). The plaintiff can do this by, among other things, demonstrating that the employer's reasons have no basis in fact, similarly-situated

employees were treated more leniently, the employer changed its reasons for discharging the plaintiff, the employer deviated from its policies, or a prohibited reason more likely motivated the employer than the proffered reason. *See Sieden v. Chipotle Mexican Grill, Inc.*, --- F.3d ---, No. 16-1065, 2017 WL 370859, at *2 (8th Cir. Jan. 26, 2017); *Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc.*, 826 F.3d 1149, 1162 (8th Cir. 2016); *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 956-58 (8th Cir. 2012). "[P]retext requires more substantial evidence . . . because unlike evidence establishing a prima facie case, evidence of pretext and retaliation is viewed in light of the employer's justification." *Pedersen*, 775 F.3d at 1055 (quoting *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 881 (8th Cir. 2005)).

Naguib first asserts that Millennium's reason for reducing her hours is pretext because she created an action plan that shows she had important work to do during the renovation, she was the only executive who suffered a reduction in hours, and Rivers admitted animus when he asked if Neufeld was taking control of Naguib. (*See* Pl. Br. 32.) The record shows that Millennium chose to maintain employment for "key employees" who had specific business work to complete during the renovation. (*See* Robbins Dep. 82:25-84:22.) But Naguib spent most of the renovation period performing mundane cleaning tasks, indicating that her position was not vital to the renovation or Millennium's ongoing business. (*See* Naguib Decl. ¶ 18.) And as already stated, the taking-control email is facially and contextually neutral and does not refer to Naguib's Freeman testimony. Therefore, Naguib has not provided sufficient evidence to discredit Millennium's reason for reducing Naguib's hours or to permit a reasonable inference that the reason is pretext. *See Ahmed v. Am. Red Cross*, 218 F.3d 932, 933 (8th Cir. 2000) (holding that a reduction in force is non-discriminatory unless there is evidence that a prohibited criterion motivated discharge).

With respect to her discharge, Naguib argues that the wage-and-hour-violations reason is pretext, as shown by: Millennium's failure to follow its investigation and progressive discipline policies, the fact that similarly-situated employees were not required to go on vacation, and Millennium's shifting explanation for Naguib's discharge (from wage and hour violations for both the punch corrections and the employee-seamstress payroll adjustments, to just the former). (*See* Pl. Br. 31-35.) She makes a variety of other factual assertions, many of which are not supported by the record. (*See id.* at 34-36.) Millennium replies that the record corroborates its honest belief that Naguib committed wage and hour violations. (*See* Def. Reply Br. 1-4.)

First, the mere allegation that Millennium failed to follow its own policies, even if true, is insufficient as a matter of law to prove pretext. *See Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 795 (8th Cir. 2011). In order for such a failure to show pretext, there must be evidence that the failure was related to Naguib's Freeman testimony. *See id.* But there is no such evidence in the record, direct or circumstantial.

Second, the record does not show that Millennium treated similarly-situated employees more leniently. Naguib's forced vacation, while unique, was imposed because Naguib avoided choosing her vacation dates. (Robbins Dep. 204:19-205:8.) She was also the only employee who had a higher-than-allowed vacation balance. (*See id.* at 206:1-10.) This distinguishes Naguib from other employees who were not forced to go on vacation and undermines any inference that retaliation for her Freeman testimony, rather than Millennium's financial goals and desire to enforce long-standing policies, motivated the forced vacation. *See Evance v. Trumann Health Servs., LLC*, 719 F.3d 673, 678 (8th Cir. 2013) (holding that proving pretext by comparison to similarly-situated individuals is a "rigorous" test requiring that the other individuals were "similarly situated in all relevant respects" and "engaged in the same conduct without any

17

mitigating or distinguishing circumstances"). In addition, Millennium's decision to discharge Naguib, instead of to discipline or suspend her, was proportional to the number of violations Millennium believed Naguib committed; her department had approximately three times the number of violations as the rest of the hotel combined. (*See* Daggett Decl. ¶ 5.) In this way, she is not similarly situated to the other managers who were disciplined and suspended.

Third, Millennium did not shift its explanation for why it discharged Naguib. Millennium has always maintained that it discharged Naguib for "wage and hour violations." (Dkt. No. 30-4 at 79.) That Millennium now chooses to focus on the punch corrections, instead of the payroll adjustments for the employee-seamstress, does not show an explanatory shift. *See Sieden v. Chipotle Mexican Grill, Inc.*, --- F.3d ---, No. 16-1065, 2017 WL 370859, at *4 (8th Cir. Jan. 26, 2017) ("A plaintiff claiming shifting explanations to support pretext must show that the reasons are completely different, not minor discrepancies.").

In summary, the record overwhelmingly supports the conclusion that Millennium honestly believed Naguib violated wage and hour laws and therefore had a legitimate, non-retaliatory reason for discharging Naguib. Naguib did not provide enough evidence to discredit this honest belief, nor did she show that circumstances permit a reasonable inference that retaliation for Naguib's Freeman testimony was the true motivation for her discharge. A reasonable jury could not find for Naguib on the issue of pretext when viewing the evidence in light of Millennium's justification.

Because Naguib failed to make out a prima facie case, and, even if she did make out a prima facie case, Millennium has legitimate, non-discriminatory reasons for reducing her hours during the renovation and discharging her, Millennium is entitled to judgment as a matter of law on Counts I and VI.

### B.  Retaliation Based on Opposition (Counts IV and V)

Naguib claims, in Counts IV and V, that Millennium is liable for reprisal and retaliatory harassment under the Minnesota Human Rights Act ("MHRA"). (Compl. ¶¶ 74-88.) The MHRA makes it unlawful for an employer to engage in "reprisal" when an employee opposes a practice forbidden by the MHRA. *See* Minn. Stat. § 363A.15 (2016). "Reprisal" includes harassment, as well as retaliation. *Id.* Forbidden practices include discharging an employee or discriminating against an employee with respect to the conditions of employment on the basis of a protected status, such as race or religion. *See* Minn. Stat. § 363A.08, subd. 2 (2016). MHRA claims may be proven with direct evidence or using the *McDonnell-Douglas* framework. *Wood v. SatCom Mktg., LLC*, 705 F.3d 823, 828 (8th Cir. 2013). Naguib only argues that she made out a prima facie case using *McDonnell-Douglas*. (*See* Pl. Br. 36-40.) Thus, she must prove: (1) statutorily-protected conduct, (2) an adverse employment action, and (3) causation between (1) and (2). *See Hoover v. Norwest Private Mortg. Banking*, 632 N.W.2d 534, 548 (Minn. 2001).

Naguib generally argues that her protected conduct includes her refusal to follow Neufeld's directives (presumably regarding the dress code) and her complaints of harassment, discrimination, and retaliation (presumably related to the forced vacation and suspension).[6] (*See* Pl. Br. 37, 40.) Despite the lack of specificity as to this element, the Court assumes, without deciding, that Naguib engaged in protected conduct.

Next, Naguib claims that she suffered the following adverse employment actions: Millennium's failure to investigate her complaints, forced vacation, discharge, defamation, and

---

[6]   Naguib also argues she has a third-party cause of action under the MHRA related to Omar's complaint, (*see* Pl. Br. 39 n.20), but such a cause of action is foreclosed by case law, *see Gagliardi v. Ortho-Midwest, Inc.*, 733 N.W.2d 171, 183 (Minn. Ct. App. 2007); *see also Dale v. U.S. Steel Corp.*, No. 13-CV-1046 (PJS/LIB), 2015 WL 4138869, at *2-7 (D. Minn. July 2, 2015) (discussing *Gagliardi* and related Minnesota Supreme Court precedent).

harassment. (*Id.* at 38-40.) As already explained, Naguib did not make out a prima facie case based on Millennium's failure to investigate, the forced vacation, or defamation. *See supra* Part III.A.2.b. Similarly, Naguib provided insufficient evidence of "severe or pervasive" harassment. *See LaMont v. Indep. Sch. Dist. No. 728*, 814 N.W.2d 14, 21 (Minn. 2012) (listing the elements of harassment in relation to hostile work environment). Naguib's discharge is the only discernable adverse employment action for Counts IV and V.

As to causation, Naguib argues that the temporal proximity is close—just several days to a few weeks. (*See* Pl. Br. 38.) She also argues that the circumstances leading up to her discharge, such as the forced vacation, and the uncle justification show causation. (*See id.* at 38-40.)

Temporal proximity greater than two-months' time between protected conduct and adverse employment action is insufficient to show causal connection by itself. *See Lors v. Dean*, 746 F.3d 857, 866 (8th Cir. 2014). Here, the dress code complaints occurred more than two months before Naguib's discharge. (*See* Naguib Dep. 242:20-243:17.) However, Naguib made her complaints less than one month before discharge—in one instance, less than one week before discharge. (*See* Dkt. No. 30-4 at 26-27, 29-33, 40-41.)

Assuming this temporal proximity is sufficient, *see Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1113 (8th Cir. 2001), the Court looks to Millennium's legitimate, non-discriminatory reason for Naguib's discharge and any evidence of pretext. As already discussed, Millennium has a strong case in this regard. *See supra* Part III.A.2.d. Naguib does not point to any additional evidence that would create a genuine issue of fact as to Millennium's belief. And close proximity is insufficient, on its own, to show pretext. *See Fezard v. United Cerebral Palsy of Cent. Ark.*, 809 F.3d 1006, 1012 (8th Cir. 2016). Therefore, Millennium is entitled to judgment as a matter of law on Counts IV and V.

### C.  Age Discrimination (Count III)

Naguib claims, in Count III, that she was discriminated against on the basis of her age, in violation of the MHRA. (Compl. ¶¶ 65-73.) The MHRA makes it unlawful for an employer, because of age, to discharge an employee or discriminate against an employee with respect to the conditions of employment. *See* Minn. Stat. § 363A.08, subd. 2 (2016). Discrimination claims brought under the MHRA may be proven with direct evidence or using the *McDonnell-Douglas* framework. *Wood v. SatCom Mktg., LLC*, 705 F.3d 823, 828 (8th Cir. 2013).

#### 1.  Direct Evidence

Millennium argues that Naguib has not made out a case of age discrimination based on direct evidence because the only age-related evidence in the case is the carry-you-out-in-a-box remark and the fact that Neufeld asked Naguib when she was going to retire. (Def. Br. 29-30.) Millennium argues that these comments are mere stray remarks unconnected to Naguib's discharge. (*Id.*) Naguib responds that the comments show direct animus, especially the box remark. (Pl. Br. 42.)

As previously stated, direct evidence shows a "specific link" between discriminatory animus and the challenged action sufficient to support a "substantially strong" inference that the employer acted on its discriminatory animus. *See Wagner v. Gallup, Inc.*, 788 F.3d 877, 884-85 (8th Cir. 2015). Stray remarks and those unrelated to the decisional process to discharge an employee are insufficient to support such an inference. *See Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 426-27 (8th Cir. 1999). Occasional inquiries about retirement plans are also insufficient. *See Cox v. Dubuque Bank & Trust Co.*, 163 F.3d 492, 497 (8th Cir. 1998).

The box remark itself does not exhibit any discriminatory animus, nor do Neufeld's retirement inquiries. *See Doucette v. Morisson Cty.*, 763 F.3d 978, 986-87 (8th Cir. 2014)

(holding that similar conduct did not show discriminatory animus). Moreover, Naguib has not provided evidence showing a specific link between her discharge and Neufeld's comments. The record shows that the remark and inquiries occurred months prior to Naguib's discharge and were unconnected to it. (*See* Naguib Dep. 132:16-133:4; Dkt. No. 30-4 at 79.) Naguib has failed to make out a case of age discrimination based on direct evidence. *See Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 954 (8th Cir. 2012) (holding that a "gap in time and lack of connection" between remarks and discharge negated direct evidence of discrimination).

### 2. *McDonnell-Douglas*

To make out a prima facie MHRA age discrimination case under *McDonnell-Douglas*, the plaintiff must prove that she (1) is a member of a protected class, (2) was qualified for the position from which she was discharged, and (3) was replaced by a non-member of the protected class. *Hoover v. Norwest Private Mortg. Banking*, 632 N.W.2d 534, 542 (Minn. 2001). As to the third element, "a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another person is hired or reassigned to perform the plaintiff's duties." *Dietrich v. Can. Pac. Ltd.*, 536 N.W.2d 319, 324 (Minn. 1995) (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)); *see Farmers Ins. Exch. v. Tomczik*, No. A10-1189, 2011 WL 1119843, at *2 (Minn. Ct. App. 2011) (unpublished) (applying *Dietrich*'s standard); *see also Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 442 (Minn. 1983) (requiring that the "same work" be assigned to "a nonmember" of the plaintiff's protected class).

Millennium does not dispute elements (1) and (2), but argues instead that Naguib was not replaced. (Def. Br. 29.) Naguib argues that she was replaced by two younger individuals. (*See* Pl.

Br. 41.) The record shows that the Executive Housekeeper position has not been filled and that two employees are covering the position's duties. (*See* Neufeld Dep. 253:4-254:1; Robbins Dep. 224:25-225:7; Naguib Decl. ¶ 23.) There is no evidence to show these individuals were completely reassigned to or hired for the Executive Housekeeper position. Rather, the facts show that the position's duties were absorbed by the two employees, to be performed in addition to their other duties, while the position remains open. Therefore, Naguib has failed to make out the third element of her prima facie age discrimination case. Even assuming, for the sake of argument, that Naguib did make out a prima facie case, Millennium has a legitimate, non-discriminatory reason for Naguib's discharge, and Naguib has insufficient evidence of pretext. *See supra* Parts III.A.2.d-e. Millennium is entitled to judgment as a matter of law on Count III.

### D.  FMLA Retaliation (Count VII)

Naguib's remaining claim, Count VII, is for interference with FMLA leave. (*See* Compl. ¶¶ 95-100.) The FMLA entitles eligible employees (like Naguib) to twelve workweeks of leave during a twelve-month period for, among other things, the existence of a serious health condition. 29 U.S.C. § 2612(a)(1)(D). The FMLA makes it unlawful for an employer to interfere with the exercise of FMLA leave. *See* 29 U.S.C. § 2615(a)(1). Interference includes not only denial of leave, but also retaliation for using leave. *See* 29 C.F.R. § 825.220(b)-(c) (2016). This can be proven with direct evidence or using the *McDonnell-Douglas* framework. *See Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc.*, 826 F.3d 1149, 1160-61 (8th Cir. 2016).

 Even assuming, without deciding, that Naguib can make out a prima facie case that she was discharged in retaliation for taking FMLA leave, Millennium's legitimate, non-discriminatory reason for her discharge (wage and hour violations) is dispositive. And though Naguib took FMLA leave less than a month before her discharge, (*see* Naguib Dep. 117:9-12,

272:3-6; Dkt. No. 40-1 at 9), close proximity is not enough, on its own, to create a genuine

dispute as to pretext for FMLA retaliation claims, *see Smith v. Allen Health Sys., Inc.*, 302 F.3d

827, 834 (8th Cir. 2002). In addition, Millennium was already looking into the wage and hour

violations before the leave was requested. (*See* Dkt. No. 30-4 at 34, 72.) This fact further

weakens Naguib's pretext argument. *See Massey-Diez*, 826 F.3d at 1163. Naguib does not point

to any additional evidence of pretext with respect to this claim. Millennium is therefore entitled

to judgment as a matter of law with respect to Count VII.

## IV. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1. Plaintiff's Motion for Leave to Supplement the Record [Dkt. No. 54] is GRANTED, to the extent Plaintiff requests to supplement the record with the Supplemental Declaration of Michael E. Gerould and its attached exhibit [Dkt. No. 57].

2. Defendants' Motion for Summary Judgment [Dkt. No. 27] is GRANTED.

3. Count II of the Complaint is DISMISSED WITHOUT PREJUDICE.

4. Counts I, III, IV, V, VI, and VII of the Complaint are DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: February 14, 2017.

s/Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge